**In re AIRPORT ASSOCIATES, Debtor.**

**FIRST HAWAIIAN BANK,
Plaintiff-Appellant,**

**v.**

**HUGH MENEFEE DEVELOPMENT CORPORATION, Richard I. Blum, Frank F. Herman, James W. Byrer, Hugh A. Menefee, Jack K. Palk, Steven J. Kolar, Hugh Menefee, Inc., and Airport Associates, Defendants-Appellees.**

**No. 77–00339(1).**

United States District Court,
D. Hawaii.

Dec. 19, 1978.

Richard A. Hicks, Nicholas C. Dreher, John R. Aube, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for plaintiff-appellant.

John A. Chanin, Patrick Y. Taomae, Honolulu, Hawaii, for defendants-appellees.

## DECISION AND ORDER OF REVERSAL

SAMUEL P. KING, Chief Judge.

Appellant, First Hawaiian Bank, seeks relief from a stay on actions against the general partners of this chapter XII debtor. On August 3, 1977, an automatic stay issued, preventing proceedings based on individual debts of the general partners. Those partners were liable on notes signed as co-makers or taken out individually for the benefit of the Debtor. Appellant commenced an adversary proceeding seeking relief from the stay on two grounds: (1) that Debtor had no equity beyond creditor-appellant's first mortgage and (2) that the bankruptcy court had no jurisdiction to stay suits against the general partners based on their direct individual liability on the notes.

Appellant's partial victory in the proceeding was short lived. Although first finding that the fair market value of the mortgaged property exceeded the amount of the note, the court found that actions against the general partners based on their individual debts would not directly affect the debtor's property. Thus, there was no jurisdiction for the stay on actions on individual debts. The court also observed, however, that "[t]he partners [were] not using any of their personal assets to inject additional cash into the Debtor estate to help keep the Debtor in an on-going business condition." Capitalizing on this finding, appellees returned to convince the bankruptcy court that an infusion of $320,000 was necessary "to achieve full occupancy" of the debtor's principal asset, a building. On July 17, 1978, an amendment to the findings was filed; the stay was resurrected; the $320,000 was paid.

Contrary to appellee's claims, this is not an exceptional case. Although a bankruptcy court may "make such orders . . .

as may be necessary for the enforcement" of the Bankruptcy Act, section 16 of the Act declares that "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." Section 16 has been construed to deny jurisdiction to stay suits against co-debtors of a principal debtor in a bankruptcy proceeding. *E. g., Reed v. General Finance Loan Co.*, 394 F.2d 509 (4th Cir. 1968). *In re Helmwood Apartments*, 9 Collier Bankruptcy Cases 443 (N.D.Ga.1976), did no more than formulate an exception that merely tests that general rule.

The *Helmwood* court prevented a creditor from destroying a chapter XII plan before it was even formulated. A general partner, one William Craig, who had not filed bankruptcy jointly with the partnership, held title to the principal chapter XII partnership property in his own name. A creditor sought satisfaction of Craig's individual defaulted note from that partnership property, which secured it. The court observed that the partnership could not be expected to engage in fruitful development of a plan if the property essential to any plan was being threatened by a creditor taking advantage of a peculiar form of title to the debtor-partnership's property. *Id.* at 458–60. Reiterating its finding that the property belonged to the partnership despite the state of title, the court spoke of "a oneness of mutual liability to the partnership creditors." *Id.* at 458. Thus, to the extent that partnership property might otherwise be subject to creditors seeking satisfaction of a general partner's individual debts, the general rule did not apply. Inferences beyond the holding in *Helmwood* are dicta.

If the thrust of *Helmwood* is not already clear, the considerations upon which bankruptcy court jurisdiction is often extended are absent here. Jurisdictional extensions to preserve a vital "asset" of debtors in rehabilitation are common where the affected creditor is not forced to carry further substantial burdens. *E. g., In re Merritt Lumber Co.*, 336 F.Supp. 325 (E.D.Pa. 1971). The burden here is substantial.

Having already gained the benefit of further money on their individual account for the benefit of their already highly leveraged partnership, the general partners should not prevent or delay satisfaction of the debt from assets not necessary to the partnership. The absence of necessity is further pronounced by the bankruptcy court's findings that "[e]ach of the general partners has individual assets in excess of individual debts" and that "(n)one of the general partners will be rendered insolvent by the required contributions . . . ."

While the appellee general partners have gained from the stay, appellant has gained nothing. Unlike the case of an insurer who upon ensured payment of the premium is forced to insure the warehouse of a debtor in possession at no greater risk by reason of the insolvency, *see id.*, appellant is harmed without an offsetting benefit. A stay would further delay appellant's recovery on the individual notes, while not significantly ensuring speedier payments on a partnership note already adequately secured.

The consideration of the purposes of a chapter XII proceeding is unhelpful. Appellees would emphasize the dearth of chapter XII case authority for the general rule by noting that rehabilitation is a primary consideration under chapter XII. Nonetheless, the general rule is applied in chapter XI proceedings, which promote a similar goal. *Globe Construction Co. v. Oklahoma City Housing Authority*, 571 F.2d 1140, 1143 (10th Cir. 1978); *In re General Steel Tank Co.*, 478 F.2d 294 (4th Cir. 1973); *In re New York & Worcester Express, Inc.*, 294 F.Supp. 1163 (S.D.N.Y.1968). Although the bankruptcy court found that the general partners were actively participating in the management and operation of the debtor's principal asset, in terms of contributing their personal assets and services, this was part of their responsibilities as general partners, which if successfully fulfilled would be to their own benefit. Even if the $320,000 were considered necessary to the success of the plan, the existing case authority would have protected only the integrity of that $320,000 as a partnership asset, not the individual assets remaining after the pro rata contribution.

Having contributed the $320,000 at their own risk, appellees shall have whatever status these circumstances would afford general partners who voluntarily contribute to such expenses as were incurred.

Accordingly, IT IS HEREBY ORDERED that the FINDINGS OF FACT AND CONCLUSIONS OF LAW filed on April 26, 1978, and amended on July 17, 1978, be AMENDED as provided above and that the stay predicated thereon be lifted.